IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARA A., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-00560-SH |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mara A. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, an individual is considered disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps

that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270,

1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

In 2020, Plaintiff applied for Title XVI disability benefits. (R. 96, 251-59.) Plaintiff alleges that she has been unable to work since May 4, 2012, due to depression, anxiety, and posttraumatic stress disorder ("PTSD"). (R. 251, 290.) Plaintiff was 45 years old on the date of the ALJ's decision. (R. 34, 251.) She has an 11th grade education and no past relevant work. (R. 62, 291.)

Plaintiff's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 66-92, 130.) ALJ Christopher Hunt conducted an administrative hearing and issued a decision on January 14, 2021, finding Plaintiff not disabled. (R. 49-65, 96-105.) However, the Appeals Council remanded the case on March 31, 2021, for consideration of additional evidence. (R. 110-15.)

On remand, the ALJ conducted a supplemental administrative hearing and again found Plaintiff not disabled in a decision dated August 20, 2021. (R. 22-34, 40-48.) The Appeals Council denied review on October 22, 2021 (R. 1-6), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481.

## III. The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of April 24, 2020. (R. 25.) At step two, the ALJ found Plaintiff to have the severe impairments of major depressive disorder, generalized anxiety disorder, and PTSD. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 25-26.)

3

The ALJ then determined Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant is capable of reasoning level of 2 as defined by Appendix C of the Dictionary of Occupational Titles (Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations). The claimant is capable of occasional contact with co-workers and supervisors. The claimant is incapable of contact with the general public and must work with things rather than people. The claimant is incapable of strict production standards, such as fast-paced integral team assembly line work or poultry processing.

(R. 26.) The ALJ provided a summary of the evidence that went into this finding. (R. 26-32.)

At step four, the ALJ found Plaintiff had no past relevant work to analyze (R. 32), so he proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform occupations existing in significant numbers in the national economy, including machine packager, linen room attendant, and small product assembler I. (R. 32-33.) The ALJ thus found Plaintiff was not disabled. (R. 33.)

## IV. Issues

Plaintiff raises three points of error: (1) the ALJ failed to fully develop the record (ECF No. 20 at 6-10);[1] (2) the RFC was unsupported by substantial evidence, because (a) the ALJ ignored objective evidence related to Plaintiff's mental impairments (*id.* at 10-

---

[1] Plaintiff frames this argument as a violation of her due process rights. Plaintiff "does not assert a colorable due process constitutional claim. Instead, her argument is one that asserts that the ALJ failed to develop the record by failing to order a consultative examination," *Duncan v. Colvin,* 608 F. App'x 566, 570 (10th Cir. 2015) (unpublished), or ask sufficient questions at the administrative hearings. In any event, Plaintiff has failed to show any prejudice, a necessary element for any due process claim. *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014).

4

13), and (b) the ALJ failed to consider the support Plaintiff receives with her activities of daily living (*id.* at 13-14).

V. **Analysis**

A. **The ALJ Sufficiently Developed the Record.**

Plaintiff contends the ALJ failed to fully develop the record because: (1) he did not sufficiently question Plaintiff about her mental impairments and symptoms at the administrative hearings, and (2) he did not order Plaintiff to attend a post-hearing consultative examination. (ECF No. 20 at 7-10.)

Although the burden to prove disability is on the claimant, a social security disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993)). The ALJ's duty is limited to fully and fairly developing the record as to material issues. *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997).

1. **Hearing Testimony**

Plaintiff argues the ALJ failed to fully develop the record, because his questioning at the two administrative hearings was insufficient as evidenced, in part, by the brevity of the two hearings. (ECF No. 20 at 9-10.) Specifically, Plaintiff asserts the ALJ failed to inquire about Plaintiff's depression, anxiety, and PTSD, and the symptoms she experiences because of her mental impairments. (*Id.* at 10.)

The ALJ's duty to develop the record "'is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.'" *Cowan v. Astrue,* 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie,* 13

5

F. 3d at 360-61)). The length of the hearing is not dispositive of whether the ALJ fulfilled this duty. *See Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir. 1993). The key inquiry is whether the ALJ developed the record sufficiently to reflect the nature of the claimant's impairments, the claimant's on-going treatment and medication, and the impact the impairments have on the claimant's daily activities. *Id.* However, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins,* 113 F.3d at 1168.

Plaintiff's contention that the ALJ asked no questions about her mental impairments and symptoms is belied by the record. At the administrative hearing on January 4, 2021, the ALJ asked Plaintiff about her living arrangements, daily activities, mental health counseling, medication effectiveness and side effects, and assistance from others. (R. 54-58.) The ALJ specifically asked Plaintiff if anxiety and depression were the reasons she was unable to work, and she replied, "Yes, sir." (R. 58.) When the ALJ asked whether anything else prevented her from working, Plaintiff replied, "Just that." (*Id.*) Additionally, Plaintiff's counsel asked questions related to Plaintiff's panic attacks and depression, including triggers, symptoms, and frequency of symptoms. (R. 59-61.) At the supplemental hearing on August 4, 2021, Plaintiff's counsel asked Plaintiff if her conditions had changed since the January 2021 hearing, and she replied, "No, sir." (R. 44-45.) Plaintiff's counsel then asked, "would it be a fair statement that [your] conditions as you testified to them on January 4th would be the same as they were on that day?" (R. 45.) Plaintiff replied, "Yes, sir." (*Id.*) Thus, despite the administrative hearing lasting only twenty-eight minutes and the supplemental hearing lasting only ten minutes, the transcripts reveal Plaintiff spoke extensively about her mental impairments,

treatment, medication, and daily activities, and was given the opportunity to speak freely about her conditions. The Court is satisfied that the ALJ fulfilled his duty of inquiry.

Moreover, Plaintiff's counsel concluded his questioning at both hearings by stating, "No further questions, Your Honor." (R. 45, 62.) If a claimant is represented by counsel at the administrative hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. It was reasonable for the ALJ to rely on the statements from Plaintiff's counsel that no further questions were necessary.

### 2. Consultative Examination

Developing the record may also involve ordering consultative examinations and testing. To establish the need for a consultative examination, a claimant must "in some fashion raise the issue sought to be developed, which, on its face, must be substantial." *Id.* (citations omitted). If counsel does not request a consultative exam, courts "will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

Consultative examinations may be used to "secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" where there is "an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision . . . ." 20 C.F.R. § 416.919a(b). Specific examples of instances where a consultative examination may be required, include:

> (1) The additional evidence needed is not contained in the records of . . . medical sources; (2) The evidence that may have been available from . . . treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control . . .; (3) Highly technical or specialized medical

>   evidence that [the ALJ] need[s] is not available from . . . treating or other medical sources; or (4) There is an indication of a change in [the claimant's] condition that is likely to affect [her] ability to work, . . . but the current severity of [her] impairment is not established.

*Id.; see also Hawkins,* 113 F.3d at 1166 (stating that a consultative examination is often required if there is a direct conflict in the medical evidence or the medical evidence is inconclusive and may be necessary where additional testing is required to explain a diagnosis).

Contrary to Plaintiff's assertion, the ALJ was not required to further develop the record by obtaining a consultative examination. If the evidence of record is insufficient to make a disability determination, the ALJ "may" take one or more actions, including ordering the claimant to undergo a consultative examination, in an effort to "try to resolve the inconsistency or insufficiency." 20 C.F.R. § 416.920b(2)(i)-(iv). But here, there was no inconsistency or insufficiency for a consultative examination to resolve. The ALJ is not required to further develop the record if there is sufficient information for the ALJ to make a disability determination. *Cowan,* 552 F.3d at 1187.

The medical evidence of record regarding Plaintiff's mental impairments includes a March 2012 consultative mental status examination (R. 363-67); her medical providers' treatment notes from November 2018 and from February 2020 through June 2021 (R. 388-95, 410-37, 440-55, 534-87); her social workers' therapy progress notes from June 2020 through April 2021 (R. 462-533); mental health treatment plans dated November 2018 and February 2021 (R. 369-77, 457-61); and mental RFC assessments completed by the state agency psychologists in June 2020 and August 2020. (R. 72-75, 88-90.) As the ALJ correctly noted, although this evidence shows Plaintiff suffers from depression, anxiety, and PTSD, which undoubtedly cause "some difficulties," it also shows the mental status examinations were generally normal regarding Plaintiff's cooperation,

pleasantness, eye contact, speech, language, thought process, association, thought content, memory, attention span, and concentration. (R. 32 (citing R. 382-92, 410-23, 431-37, 440-45, 462-77, 534-46, 548-60, 562-86)).) Plaintiff points to no direct conflict in the medical evidence, inconclusive medical evidence, or additional tests needed to explain her diagnoses. *See Hawkins,* 113 F. 3d at 1166. The ALJ had sufficient evidence to make a disability determination, and the need for a consultative examination is not clearly established in the record.

> **B.     The ALJ Did Not Err in Forming the RFC.**
>
>> **1.      Standards for Evaluating RFC**

In order to proceed to steps four and five of the sequential evaluation, the ALJ determines a claimant's RFC. That is, a claimant may have an impairment(s) and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 416.945(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 416.920(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 416.913(a).

9

Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." SSR 96-8p, at *7.

## 2. The ALJ considered the relevant evidence.

Plaintiff asserts the ALJ's RFC is not supported by substantial evidence, because the ALJ failed to consider certain test results which, according to Plaintiff, indicate the need for a more restrictive RFC. (ECF No. 20 at 12-13.) Specifically, Plaintiff points to her scores on the Patient Health Questionnaire-9 ("PHQ-9"),[2] General Anxiety Disorder-7 ("GAD-7"),[3] and PTSD Checklist for DSM-5 ("PCL-5").[4] (*Id.* at 12.) Plaintiff notes that, in November 2018, her PHQ-9 score was 27, while in August 2020, her PHQ-9 was 24, the GAD-7 was 21, and the PCL-5 was 57. (*Id.*)

In assessing Plaintiff's mental limitations, the ALJ thoroughly discussed Plaintiff's testimony and the findings of her treating, consultative, and reviewing physicians and providers. (R. 26-32.) As relevant to this appeal, the ALJ considered the assessment that

---

[2] The PHQ-9 is the "depression module" of a self-administered diagnostic instrument common for mental disorders. It is a "reliable and valid measure of depression severity." Kurt Kroenke, et al., *The PHQ-9,* J. Gen. Intern. Med. (Sept. 2001), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ (last visited Aug. 9, 2023). PHQ-9 scores of 20 or greater represent severe depression. *Id.*

[3] "The GAD-7 scale is a validated brief self-report measure to screen for [generalized anxiety disorder] and assess the severity of symptoms." Emily P. Terlizzi, Maria A. Villarroel, Nat'l Ctr. for Health Statistics, *Symptoms of Generalized Anxiety Disorder Among Adults: United States, 2019*, Data Brief No. 378 (Sept. 2020), available at https://pubmed.ncbi.nlm.nih.gov/33054928/ (last visited Aug. 9, 2023). Adults with GAD-7 scores of 15-21 are considered to have severe symptoms. *Id.*

[4] The PCL-5 "is a 20-item self-report measure that assesses the presence and severity of PTSD symptoms." Nat'l Ctr. for PTSD, *Using the PTSD Checklist for DSM-5 (PCL-5),* https://www.ptsd.va.gov/professional/assessment/documents/using-PCL5.pdf (last visited Aug. 9, 2023). Generally, "a total score of 31-33 or higher" on a PCL-5 exam demonstrates that "a patient may benefit from PTSD treatment." *Id.*

her counselor, Robert Koch, completed on November 15, 2018.[5] The ALJ noted Plaintiff's subjective complaints to Mr. Koch, as well as Mr. Koch's mental status examination findings of an anxious and animated mood (but appropriate for the situation), normal eye contact, normal speech and thought process, adequate hygiene, and average IQ. (R. 28). While the ALJ cited the pages on which the PHQ-9 score is found, the ALJ did not specifically note the PHQ-9 score of 27. (R. 28 (citing R. 384).) The ALJ also considered the August 11, 2020 progress note of Plaintiff's social worker, Carrie McDowell.[6] (R. 30 (citing R. 470-73).) The ALJ discussed the symptoms Plaintiff reported to Ms. McDowell, as well as Ms. McDowell's findings that Plaintiff was on time, fully oriented, cooperative, and attentive. (R. 473.) Again, while he cited the page containing the scores, the ALJ did not specifically note Plaintiff's GAD-7 score of 21, her PHQ-9 score of 24, or her PCL-5 score of 57. (R. 473.)

It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th

---

[5] Mr. Koch completed his assessment on November 15, 2018, but did not submit it until November 20, 2018. (R. 384, 396.) The ALJ uses November 20, 2018, as the date when referring to this assessment in his decision (R. 28), while Plaintiff uses November 15, 2018, in her briefing (ECF No. 20 at 12). Although different dates are used, both Plaintiff and the ALJ are referencing to the same assessment.

[6] Ms. McDowell treated Plaintiff on August 11, 2020, but did not sign her progress note until the following day. (R. 472-73.) The ALJ uses August 12, 2020, as the date when referring to this progress note in his decision (R. 30), while Plaintiff uses August 11, 2020, in her briefing. (ECF No. 20 at 12.) Although different dates are used, the Court notes the references are to the same progress note.

Cir. 1996). However, the ALJ is not required to discuss in detail each piece of evidence in the record. *See id.* at 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Although the ALJ did not specifically reference the questionnaire scores Plaintiff identifies, the ALJ did thoroughly discuss the treatment notes where such scores were recorded (R. 28, 30), and Plaintiff points to no work-related functional limitations identified by Mr. Koch or Ms. McDowell. (R. 28, 30.) Moreover, the ALJ identified major depressive disorder, generalized anxiety disorder, and PTSD as severe impairments at step two, and Plaintiff acknowledges the various questionnaire scores represent severe depression, severe anxiety, and a potential benefit from PTSD treatment. (ECF No. 20 at 13.) Plaintiff fails to show how the questionnaire scores demonstrate greater RFC limitations than the ALJ identified. Because Plaintiff points to no evidence the ALJ failed to consider, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

### 3.  The ALJ properly considered Plaintiff's daily activities.

Plaintiff contends the ALJ failed to account for the fact that she conducts her daily activities in a "highly sheltered manner" and needs assistance with her activities of daily living, as described in Listing 12.00 on Mental Disorders. (ECF No. 20 at 13-14.) It is unclear whether Plaintiff is arguing the ALJ should have found her impairments met or equaled one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity or whether the ALJ should have included a limitation

for a highly sheltered and supportive environment in the RFC determination. In either circumstance, Plaintiff's assertion is belied by the record. Although Plaintiff claims in her briefing that she needs help with her daily activities, she fails to cite to any evidence other than her own assertions indicating she requires assistance to function at work or at home. *See Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992) ("[a claimant's] testimony alone cannot establish a nonexertional impairment"). Notably, the ALJ discussed Plaintiff's hearing testimony that she lives by herself in an apartment on the third floor, does her own cooking and cleaning, sometimes needs to call her therapist to recover from a panic attack, and tries to avoid people when shopping. (R. 27.) The longitudinal evidence in the record does not reflect further limitations; there is no medical source opinion in the record that identifies limitations greater than those included in the RFC assessment; and the ALJ clearly considered the evidence of record. Nothing more was required. Because Plaintiff points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett*, 395 F.3d at 1172.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

SO ORDERED this 17th day of August, 2023.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT